BORMAN'S, INC, *v* LIQUOR CONTROL COMMISSION

1. INTOXICATING LIQUORS—STATE REGULATION—POLICE POWER—CONSTITUTIONAL LAW.

> A state is given great latitude in controlling liquor traffic but such power is not unlimited; the state is bound by the limitations of the Fourteenth Amendment (US Const, Ams 14, 21).

2. INTOXICATING LIQUORS—LIQUOR CONTROL ACT—LICENSES—"TIED HOUSE" STATUTE.

> The purpose of the amendment to the Michigan Liquor Control Act prohibiting retail license holders from also possessing a wholesale or warehouse license, is founded on the traditional legislative concern with "tied houses" in the liquor industry; "tied house" statutes are aimed at preventing the integration of manufacturing, wholesale, warehouse, and retail outlets in the liquor industry, so that economic power at one level in the four-tiered system cannot be transferred to another level in order to gain control at the second level (MCLA 436-.19d[2]).

3. INTOXICATING LIQUORS—LIQUOR CONTROL ACT—LICENSES—"TIED HOUSE" STATUTE—CONSTITUTIONAL LAW.

> A rational relationship exists between the state's control of the liquor traffic and the statutory prohibition that holders of retail liquor licenses may not also possess warehouse or wholesale licenses; the amendment to the liquor control act, containing this prohibition, is constitutional (MCLA 436-.19d[2]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur 2d, Intoxicating Liquors § 23 *et seq.*
[2–5, 7] 45 Am Jur 2d, Intoxicating Liquors § 123.
[6] 16 Am Jur 2d, Constitutional Law § 498 *et seq.*

4. INTOXICATING LIQUORS — LICENSES — "TIED HOUSE" STATUTE — WAREHOUSES — RETAILERS.

The Legislature has the power to differentiate between groups in the alcoholic beverage marketing chain, define classes, and issue licenses accordingly; the fact that the Legislature did not establish a special warehouse license for parties that stock alcoholic beverages only for their own licensed retail outlets does not discriminate against a plaintiff in such a situation because all other parties, in the same situation as plaintiff have been denied such multiple licenses (MCLA 436.19d).

5. INTOXICATING LIQUORS — LICENSES — "TIED HOUSE" STATUTE — CLASSIFICATION — REASONABLE BASIS.

The statutory amendment which prohibits holders of retail liquor licenses from having any wholesale or warehouse licenses has a reasonable basis, even if the warehouse makes sales only to its own retail outlets, because smaller retailers are protected against chain store competition, orderly marketing conditions are maintained in the liquor business, and temperance, by the prevention of lower prices, is fostered (MCLA 436-.19d[2]).

6. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—REASONABLE BASIS.

A classification is valid if a state of facts can be conceived which would form a reasonable basis for the classification; it is not necessary that the reasons which would support a classification in a particular case be those which the Legislature considered at the time the act was promulgated.

7. INTOXICATING LIQUORS—LICENSES—"TIED HOUSE" STATUTE—CONSTITUTIONAL LAW.

The amendment to the Michigan Liquor Control Act prohibiting any specially-designated distributor or specially-designated merchant, or any other holder of a retailer's license, from holding any wholesale or warehouse license, is a valid exercise of the police power and does not violate the equal protection and due process clauses of the Federal and State Constitutions (MCLA 436.19d[2]).

Appeal from Wayne, John D. O'Hair, J. Submitted Division 1 October 6, 1971, at Detroit. (Docket No. 11107.) Decided January 20, 1972. Leave to appeal denied, 387 Mich 772.

Complaint by Borman's, Inc., against the Michigan Liquor Control Commission for an injunction to restrain the commission from revoking plaintiff's warehouse license. Summary judgment for plaintiff; permanent injunction granted. Defendant appeals. Reversed and remanded with instructions.

*Friedman, Meyers & Keys* (by *Lawrence S. Jackier* and *Carl G. Becker*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Richard I. Rubin*, Assistant Attorney General, for defendant commission.

Before: LESINSKI, C. J., and V. J. BRENNAN and O'HARA,* JJ.

LESINSKI, C. J. Defendant Michigan Liquor Control Commission appeals from the decision of the trial court granting the motion of plaintiff Borman's, Inc., for summary judgment and permanently enjoining defendant commission from revoking plaintiff Borman's warehouse license.

Borman's, a Delaware corporation, owns a chain of 77 retail grocery outlets which sell beer and wine, in addition to numerous other products. In order to stock and service its chain of stores, Borman's also operates a warehouse, which is a central distribution point for a majority of the goods dispensed by its retail outlets. By maintaining its own warehouse, numerous advantages accrue to Borman's. It is able to dispense with the hiring of independent contractors to store, unpack, repack and distribute its goods

---

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to its retail outlets. Borman's is able to purchase goods at a quantity discount. Additionally, its warehousing system allows it to achieve central inventory control. Borman's warehouse operation is solely for the benefit of its retail outlets. No sales are made from the warehouse to independent entities.

On May 1, 1969, defendant commission issued Borman's a warehouse license, allowing it to stock beer and wine at its central warehouse. Borman's already possessed numerous specially designated merchant (SDM) licenses[1] for its outlets that sold beer and wine. The warehouse license was valid until May 1, 1970, unless it was revoked by defendant prior to that date.

The Michigan Liquor Control Act, MCLA 436.1, *et seq.;* MSA 18.971, *et seq.,* was amended subsequent to the issuance of the warehouse license. The terms of that amendment in relevant part provide that "no specially designated distributor or specially designated merchant or any other holder of a retailer license shall be eligible to hold any wholesale or warehouse license." MCLA 436.19d(2); MSA 18-.990(4)(2). Acting pursuant to the amendment, defendant commission demanded that Borman's return the warehouse license which had been issued it.

In response to the commission's demand, Borman's filed this action, asking that defendant commission be enjoined from revoking the warehouse license which it had issued to Borman's, on the ground that section 19d(2), as amended, of the Michigan Liquor Control Act was unconstitutional. The commission moved for summary judgment, alleging that Borman's had failed to state a claim upon which relief

---

[1] A specially designated merchant is defined as "any person to whom the commission grants a license to sell beer and/or wine at retail for consumption off the premises of such licensed place." MCLA 436.2q; MSA 18.972(17).

could be granted. Borman's urged in reply that the commission's motion be denied, and moved for judgment on its own behalf. The trial court, in a written opinion, held that section 19d(2) was unconstitutional as applied to Borman's. Accordingly, judgment was granted for plaintiff Borman's.

On appeal, the commission contends that section 19d(2) of the Michigan Liquor Control Act is a valid exercise of the police power of the State of Michigan and that section 19d(2) is likewise constitutional in its application to Borman's. Plaintiff Borman's, on the other hand, argues that section 19d (2) is violative of both the equal protection and due process clauses of the United States Constitution and the Michigan Constitution.

The guarantee of equal protection of the laws is afforded by both US Const, Am 14, § 1, and Mich Const 1963, art 1, § 2. The Michigan Supreme Court has held that the protection provided by the two clauses is coextensive. *Naudzius v Lahr*, 253 Mich 216 (1931). In determining whether a given provision is violative of equal protection of the laws, courts must keep in view the strong presumption of constitutional validity which attaches to legislation. *Gauthier v Campbell, Wyant & Cannon Foundry Co*, 360 Mich 510 (1960). Thus:

"There is no doubt that State legislatures have a broad range of discretion in establishing classifications in the exercise of their powers of regulation. However, the constitutional guarantees of equal protection are interposed against discriminations that are entirely arbitrary. In determining what is within legislative discretion and what is arbitrary, regard must be had for the particular subject of the State legislation. There must be a relation between the classification and the purposes of the act in

which it is found." *Fox* v *Employment Security Commission,* 379 Mich 579, 588 (1967).

As part of its policy to control alcoholic liquor traffic within the state, the Legislature has deemed it necessary to separate retailers (specially designated distributors [SDD's],[2] SDM's, and other holders of retailer licenses) from warehousers and wholesalers, by prohibiting retailers from holding a warehouse or wholesale license. The position of Borman's is that, even if such a classification is generally valid, it is overinclusive. Borman's argues that it should not be placed within the proscribed class because it stores beer and wine only for its own retail outlets, unlike most warehouses. Relevant to the inquiry of whether such a distinction is arbitrary and invidious, both generally and as to Borman's, is the purpose of both the Michigan Liquor Control Act and the 1969 amendment thereto.

The title of the Michigan Liquor Control Act reads, in part, as follows:

"An act to create a liquor control commission for the control of alcoholic beverage traffic within the state of Michigan, and to prescribe its powers, duties, and limitations; to provide for the control of the alcoholic liquor traffic within the state of Michigan and the establishment of state liquor stores; * * * to provide for the incorporation of farmer cooperative wineries and the granting of certain rights and privileges thereto; to provide for the licensing and taxation thereof, and the disposition of monies received under this act; to provide for the enforcement and to prescribe penalties for violations of this act."

---

[2] A specially designated distributor is defined as "a person engaged in an established business licensed by the commission to distribute alcoholic liquor other than wine under 16 per cent alcohol by volume and beer in the original package for the commission for consumption off the premises." MCLA 436.2p; MSA 18.972(16).

Thus the purpose of the act itself is broad—to control "alcoholic liquor traffic" within the state. Likewise, the power vested in the states to legislate concerning intoxicating liquors is great. Pursuant to US Const, Am XXI, § 2, such power is unfettered by even the commerce clause. *Ziffrin, Inc* v *Reeves,* 308 US 132, 138; 60 S Ct 163, 167; 84 L Ed 128, 135 (1939). As the United States Supreme Court there stated:

"Without doubt a state may absolutely prohibit the manufacture of intoxicants, their transportation, sale or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Further, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect of them."

Similarly, the Michigan Supreme Court has recognized the wide latitude given the state to regulate alcoholic beverages. The Court stated in *Fitzpatrick* v *Liquor Control Commission,* 316 Mich 83, 96–97 (1946), that:

"The Legislature has seen fit to impose restraints and limitations upon the liquor traffic more drastic than might appear to be necessary if applied to traffic in such ordinary commodities as corn, wheat, shoes, groceries, and similar articles of commerce and trade. The danger inherent in the excessive use of intoxicating liquor and its effect on health, morals and public safety is recognized by many laws seeking to regulate and control its use, for example, drunk driving, intoxication in public places, sale of intoxicating liquor to minors."

*Fitzpatrick* upheld against due process and equal protection attacks an amendment to the Michigan Liquor Control Act which provided that all appli-

cants for a bartender's license shall be male, with the exception of wives or daughters of male owners of establishments licensed to sell alcoholic liquor. 1945 PA 133, § 19a, repealed by 1955 PA 206. Subsequently, the United States Supreme Court upheld the constitutional validity of the Michigan provision in *Goesaert* v *Cleary,* 335 US 464, 465; 69 S Ct 198, 199; 93 L Ed 163, 165 (1948), referring to the regulation of liquor traffic as "one of the oldest and most untrammeled of legislative powers".

In *Beacon Club* v *Kalamazoo County Sheriff,* 332 Mich 412 (1952), *appeal dismissed sub nom Eight O'Clock Club* v *Buder,* 343 US 971; 72 S Ct 1077; 96 L Ed 1366 (1952); *reh den* 344 US 848; 73 S Ct 6; 97 L Ed 659 (1952), it was held that another amendment to the act, prohibiting so-called bottle clubs, was not a denial of equal protection or due process. The Court stated that the act had only one object, the regulation and control of the liquor traffic. 332 Mich 412, 425.

Thus, strong authority supports the great latitude given the state in controlling liquor traffic. However, the state is still bound by constitutional limitations in the exercise of its broad power. Although the state, in the proper exercise of its police power, can regulate or prohibit businesses which are injurious to the public, "it is equally well settled that such regulation is not unlimited in scope, but is subject to the limitations imposed by that [the 14th] amendment". *Glicker* v *Michigan Liquor Control Commission,* 160 F2d 96, 100 (CA 6, 1947). In *Goesaert, supra,* 335 US 466; 69 S Ct 199; 93 L Ed 165, the United States Supreme Court said that "The Constitution in enjoining the equal protection of the laws upon states precludes irrational discrimination as between persons or groups of persons in the incidence of a law". It is still necessary, then, to ana-

lyze the amendment in question in the terms set down by *Fox, supra.*

The purpose of the 1969 amendment, which prohibits holders of retail licenses from also possessing a wholesale or warehouse license, can be found in part in the traditional legislative concern with "tied houses" in the liquor industry. "Tied house" statutes are aimed at preventing the integration of manufacturing, wholesale, warehouse, and retail outlets in the liquor industry. The advent of such statutes is not a recent development, as Washington sustained the validity of its "tied house" law in a 1913 test. *Lewer v Cornelius,* 72 Wash 124; 129 P 911 (1913). It has been a fear, as recognized by the trial court below, that economic power at one level in this four-tiered system (manufacturers, warehouses, wholesalers, and retailers) could be transferred to another level in order to gain control at the second level. Plaintiff Borman's, in its brief, concedes that the latter concern is a legitimate one for state legislatures.

Several courts have held variations of the "tied house" statute valid against constitutional attack. *Affiliated Distillers Brands Corp v Sills,* 56 NJ 251; 265 A2d 809 (1970); *Grand Union Co v Sills,* 43 NJ 390; 204 A2d 853 (1964); *Pickerhill v Schott,* 55 So 2d 716 (Fla, 1951), cert den 344 US 815; 73 S Ct 9; 97 L Ed 634 (1952); *Weisberg v Taylor,* 409 Ill 384; 100 NE2d 748 (1951); *Sepe v Daneker,* 76 RI 160; 68 A2d 101 (1949); *State v Zazzaro,* 128 Conn 160; 20 A2d 737 (1941). We concur with the judgment of these courts. There is a rational relation between the control of liquor traffic and the prohibition that holders of SDD, SDM, or other retailer licenses may not also possess warehouse or wholesale licenses.

Plaintiff Borman's maintains, however, and the trial court below so found, that the amendment is

unconstitutional as applied to it, since Borman's does not compete with other warehouses, but merely stores goods for ultimate distribution to its own retail outlets.   Through this marketing method, plaintiff can sell beer and wine to consumers at lower levels and sell greater varieties of such beverages.   Borman's argues that it is impossible for it to gain control over retail units that it already owns. The trial court, in accepting plaintiff's contention, stated that "under these circumstances, there is clearly no possibility of plaintiff perpetrating the 'tied house evil' which section 19d(2) allegedly is aimed at preventing".

Yet, defendant commission points out that, under the warehouse license presently held by Borman's, it could at any time begin competing with other warehouses, by storing beer and wine for retail outlets other than its own.   Borman's warehouse license contains no conditions limiting its scope to products which are to be sold by its own stores, but is as broad as the license granted to wholesalers that do not hold SDD, SDM, or other retailer licenses.   Thus, the potential exists for the abuse at which the amendment was aimed.

Further, defendant Borman's cannot be heard to complain of the Legislature's failure to direct the commission to create a special warehouse license for parties that desire to store beer and wine only for their own retail outlets, as does Borman's.   The Michigan Liquor Control Act encompasses a complex regulatory scheme to control alcoholic beverage traffic.   In order to accomplish its purpose, it has established several classes of licenses.   For example, the act provides for nine different classes of vendors, including SDM's and SDD's.   MCLA 436.24; MSA 18.995.   Further, the act provides for the licensing

of brewers, distillers, wine makers, wholesalers and warehouses. MCLA 436.2b, 2g, 2m, 2w; MSA 18-.972(2), (7), (13), (23).

We have already alluded to the wide latitude given the state to exercise its police powers in the regulation of liquor traffic. See *Ziffrin, supra; Goesaert, supra; Fitzpatrick, supra;* and *Beacon Club, supra.* On the basis of such authority, the Legislature has the power to differentiate between groups in the alcoholic beverage marketing chain, define classes, and issue licenses accordingly. The Legislature, in the exercise of its power, has not seen fit to establish a special warehouse license for parties in Borman's situation; *i.e.,* warehouses that stock alcoholic beverages only for their own retail outlets. Consequently, it is apparent that Borman's cannot claim a discrimination on the part of the Legislature or commission because other parties that desire to warehouse beer and wine for their retail outlets have been granted licenses. All such parties have been denied them, in conformity with the 1969 amendment.

Furthermore, the classification which the Legislature has established, if it possesses a reasonable basis, does not violate the equal protection clause "merely because it is not made with mathematical nicety, or because in practice it results in some inequality." *Lindsley* v *Natural Carbonic Gas Co,* 220 US 61, 78; 31 S Ct 337, 340; 55 L Ed 369, 377 (1911). See, also, *Gauthier, supra,* and *Naudzius, supra.* The classification which the Legislature has established in this case does have a reasonable basis, even as to Borman's.

Two such bases are desires to protect smaller retailers against chain store competition in the alcoholic beverage market, and maintain orderly marketing conditions in that market.

It is apparent that plaintiff Borman's by functioning as a vertically integrated economic unit, has a competitive advantage over other retail sellers of beer and wine, even if it does not compete with warehousemen or cannot gain control over the retail outlets which it already owns. By employing economics of scale in its marketing techniques, it can sell its beverages at lower prices, as it states in its brief on appeal. Thus, its stores, by selling at lower prices, gain a competitive advantage over other retail outlets which cannot afford a central warehouse.

The California Department of Alcoholic Beverage Control applied a California statute to a similar situation in *Louis Stores, Inc* v *Department of Alcoholic Beverage Control,* 57 Cal 2d 749; 22 Cal Rptr 14 (1962). The department revoked the wholesale license of Louis Stores, which operated a large number of retail grocery stores and held a wholesale beer and wine license, on the ground that Louis Stores failed to comply with a California statute requiring holders of wholesale licenses to carry on business as a bona fide wholesaler by sale to retail licensees other than those owned by the wholesale licensee itself. Louis Stores made no sales except to its own retail outlets. The California Supreme Court, in construing the statute, stated that the record in *Louis Stores* supported "the implied finding that continuation of the present use of Louis Stores' wholesale beer and wine license will be contrary to public welfare in that Louis Stores will thus secure the right to maintain an unfair competitive advantage over other retailers who do not have and cannot obtain such licenses and therefore cannot purchase directly from breweries and wineries at prices lower than those charged by wholesalers". 57 Cal 2d 758–759; 22 Cal Rptr 18–19. The Court added that the

provision "is a part of the general system of liquor regulation which includes the establishment of orderly marketing conditions". 57 Cal 2d 760; 22 Cal Rptr 20. See, also, *Borun Bros v Department of Alcoholic Beverage Control,* 215 Cal App 2d 503; 30 Cal Rptr 175 (1963).

Other courts have suggested similar reasons for "tied house" legislation. The New Jersey Supreme Court, in *Affiliated Distillers Brands Corp, supra,* 260; 265 A2d 814, declared that its "decisions have indicated that the Legislature also intended to insure the alcoholic beverage industry remain stable. * * * Price cutting practices at any tier affect the stability of the market". In *Grand Union Co v Sills, supra,* 401; 204 A2d 862, the New Jersey Supreme Court held valid a statute designed to limit retail liquor licenses to two per person. The Court noted that the statute was neither irrational nor invidious "to the extent that it is aimed at chain liquor store operations". 43 NJ 405; 204 A2d 861. Citing the dangers that would result from the concentration of retailing in the hands of economically powerful interests, the Court specifically pointed to the state's interest in trade stability of the liquor market.

The California Supreme Court spoke to a like problem in *Wilke & Holzheiser, Inc v Department of Alcoholic Beverage Control,* 65 Cal 2d 349, 362; 55 Cal Rptr 23, 32; 420 P2d 735, 744 (1966), where the retail price maintenance provisions of California's Alcoholic Beverage Control Act were upheld:

"The legislature may likewise have concluded that giant retailers and chain markets should be afforded no opportunity to use loss leaders in branded liquor to attract customers * * * and thus ultimately to force smaller retailers out of business. Such tactics, the legislature may have thought, would disrupt orderly distribution by endangering the continued

validity of one method of marketing; the corner grocery store. The legislature may have decided not to expose these channels of distribution to possible economic destruction through manipulation, by powerful competitors, of so highly volatile and attractive a product as branded liquor."

One further ground has been put forth to support tied house legislation. Various courts have held that such provisions foster temperance, a valid legislative concern. See *Affiliated Distillers Brands Corp* v *Sills, supra,* and *Weisberg* v *Taylor, supra.* To the extent that Borman's warehouse system leads to lower prices and increased consumption, it would run contrary to a legislative goal of temperance.

As the Michigan Supreme Court said in *McDaniel* v *Campbell, Wyant and Cannon Foundry,* 367 Mich 356, 360 (1962), it is not necessary that the reasons which would support a classification in a particular case be those which the Legislature considered at the time the act was promulgated. Rather, "it is enough if a state of facts can be conceived which would form a reasonable basis for the classification." There is such a state of facts here, whether it be a concern for the trade stability of the beer and wine market, a desire to protect the smaller stores vis-a-vis the chains, or an attempt to foster temperance.

Accordingly, section 19d(2) does not violate the equal protection clause of either the United States or Michigan Constitution, in general or as applied to Borman's.

Plaintiff Borman's also alleges, and the trial court ruled, that the 1969 amendment violates the due process clause of the Michigan Constitution, Const 1963, art 1, § 17, and the Fourteenth Amendment to the United States Constitution, US Const, Am XIV, § 1. The Michigan Supreme Court set down a general rule to determine due process questions, relied

on by the trial court below, in *Carolene Products Co v Thomson,* 276 Mich 172, 178 (1936):

"The Constitution guarantees to citizens the general right to engage in any business which does not harm the public.  *  *  *  The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud.  In the exercise of the police power there must be not only a public welfare to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose.  *  *  *

"The primary determination of public need and character of remedy in the exercise of the police power is in the legislature.  Unless the remedy is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution, the Act must be sustained."

For a similar statement, see *Grocers Dairy Co v Department of Agriculture Director,* 377 Mich 71 (1966).

As the United States Court of Appeals for the Sixth Circuit said in *Glicker, supra,* p 98, "the regulation of the liquor traffic in any state is exclusively under the police power of that particular state." The trial court in the instant case noted that "without question 'liquor traffic' within the state is a proper subject for the Legislature's exercise of its police powers to promote the health, morals, and welfare of the people of Michigan."

Under the *Carolene* test, this Court cannot say that there is an unreasonable relation between the remedy adopted, forbidding the holder of an SDD, SDM, or other retailer license from possessing a warehouse license, whether that holder stores goods only for his own retail outlets or for others, and a

proper public purpose, to control the liquor traffic. It matters not whether the Legislature in this case is seeking to promote trade stability of that traffic, protect smaller retailers vis-a-vis chain stores, or foster temperance. Such goals are all related to a proper public purpose; control of the liquor traffic. See in this regard, *Fitzpatrick, supra,* p 92, and *Beacon Club, supra,* pp 425–426.

Writing for the United States Supreme Court in *Dandridge* v *Williams,* 397 US 471, 486; 90 S Ct 1153, 1162; 25 L Ed 2d 491, 502 (1970), Mr. Justice Stewart stated:

"The Fourteenth Amendment gives the Federal courts no power to impose upon the states their views of what constitutes wise economic or social policy."

Section 19d(2) is violative of neither the equal protection nor due process clauses of the United States and Michigan Constitutions.

The decision of the trial court is vacated, and the case remanded for disposition not inconsistent with this opinion.

Reversed and remanded.

All concurred.