STATE EX REL. GRAND BAZAAR LIQUORS, INC., a Wisconsin corporation, Plaintiff-Petitioner-Respondent and Cross-Appellant-Petitioner,

v.

CITY OF MILWAUKEE, a municipal corporation, Defendant-Respondent-Appellant and Cross-Respondent.

Supreme Court

*No. 79–1712. Argued December 1, 1981.—Decided January 5, 1982.*

(Also reported in 313 N.W.2d 805.)

---

[1] *See:* Sec. 809.10(4), Stats.

For the plaintiff-petitioner there was a brief by *Alan Marcuvitz, Michael J. Jassak, Donald V. Kozlovsky* and *Peregrine, Marcuvitz & Peltin, S.C.,* of Milwaukee, and oral argument by *Mr. Jassak.*

For the defendant-appellant the cause was argued by *Reynold Scott Ritter,* assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

WILLIAM G. CALLOW, J.   This is a review of a decision of the court of appeals,[1] affirming that part of Milwaukee county circuit court Judge Michael J. Barron's October 10, 1979, declaratory judgment holding constitutionally valid sec. 90–25.1(2) of the city of Milwaukee Code of Ordinances, establishing an eligibility requirement that a Class "A" liquor license applicant receive at least 50 percent of its income from the on-the-premises sale of intoxicants; and reversing that portion of the declaratory judgment holding constitutionally invalid sec. 90–25.1(3), a grandfather clause, which exempts already licensed establishments on the date the ordinance took effect who do not meet the percentage requirement from subsection (2) compliance. We hold that both sec. 90–25.1(2) and sec. 90.25–1(3) are consti-

[1] *State ex rel. Grand Bazaar v. Milwaukee,* 102 Wis. 2d 208, 306 N.W.2d 255 (Ct. App. 1981).

tutionally infirm, and we reverse the decision of the court of appeals.

The material facts in this controversy are not in dispute. Plaintiff[2] submitted an application for a Class "A" liquor license[3] on January 14, 1977, which was not acted upon by the Common Council before the close of the license year on June 30, 1977. On February 8, 1977, an ordinance was introduced which, in effect, prohibited grocery stores from selling liquor by requiring that an applicant for a Class "A" license derive at least 50 percent of its income from on-the-premises liquor sales as a condition precedent to obtaining such license. This ordinance, which is the subject of our review, was passed and became effective June 30, 1977. In pertinent part, the ordinance reads as follows:

"90–25.1. SALE OF COMMODITIES OTHER THAN INTOXICATING LIQUOR AND FERMENTED MALT BEVERAGES BY CLASS 'A' LICENSEES.

"(1) DEFINITIONS. 'Premises' shall mean a premises for which a Class 'A' intoxicating liquor license has been granted.

". . . .

"(2) SALE OF OTHER COMMODITIES PROHIBITED. Every person, firm or corporation holding a

---

[2] Plaintiff is a corporation owned equally by Joseph E. May and a corporate subsidiary of Jewel Companies, Inc. Jewel operates a large grocery store in Milwaukee at South 20th Street and West Oklahoma Avenue known as "Jewel Grand Bazaar." Plaintiff applied for a Class "A" license to sell liquor in the same building housing the Jewel grocery store, separating the operations with a permanent wall and separate entrances.

At oral argument before the trial court, plaintiff's attorney conceded that the grocery and proposed liquor operation were in one "premises" for the purpose of sec. 90–25.1(1). Accordingly, we will not discuss this issue within the context of this opinion.

[3] A Class "A" license concerns the sale of packaged beer and liquor to be consumed off the premises. A Class "B" license pertains to on-the-premise consumption, such as restaurants and taverns.

Class 'A' retailer's intoxicating liquor license shall receive no less than one-half (½) of its income for the premises from sales of intoxicating liquor and fermented malt beverage.

"(3) EXCEPTIONS. This ordinance shall not apply to any person, firm or corporation holding a Class 'A' retailer's intoxicating liquor license for a premises, provided such person, firm or corporation holds a Class 'A' retailer's intoxicating liquor license on the date of passage of this ordinance for such premises and such person, firm or corporation continuously renews such license for such premises thereafter."[4]

---

[4] Sec. 90-25.1(2) has become sec. 90-4(1)(b), and sec. 90-25.1(3) has become sec. 90-4(1)(b)1. Although the substance of the ordinance remains unchanged, we set out the new provisions in full to show the changes in wording:

"90-4. *Classification of Licenses.* . . .

"(1) CLASS 'A' RETAILER'S INTOXICATING LIQUOR LICENSE. . . .

"(b) Eligibility Requirements; Record. Every person, firm or corporation holding a Class 'A' retailer's intoxicating liquor license shall receive no less than one-half (½) of its income for the licensed premises from the sale of intoxicating liquor or from the combined sales of intoxicating liquor and fermented malt beverages. *(In order to be able to sell fermented malt beverages, the licensee shall also be the holder of a Class 'A' fermented malt beverage retailer license.)*

"1. The income eligibility requirement shall not apply to any person, firm or corporation holding a Class 'A' retailer's intoxicating liquor license for such premises on June 14, 1977, and such person, firm or corporation continuously renews such license for the premises thereafter." (Emphasis added.)

We will refer to the sections of the ordinance as they existed throughout the litigation.

The underlying authority for granting liquor licenses is found in sec. 176.05, Stats.:

"176.05 Liquor licenses. (1) AUTHORITY TO GRANT LICENSES. Each town board, village board and common council may grant retail licenses, under the conditions and restrictions in this chapter contained, to such persons entitled to a license under this chapter as they deem proper to keep places within their respective towns, villages, or cities for the sale of intoxicating liquors. No

Plaintiff filed a second application for a Class "A" liquor license on August 11, 1977, which was denied on November 8, 1977. Plaintiff commenced suit alleging that subsection (2) was an unreasonable and arbitrary exercise of the city of Milwaukee's police power and a denial of equal protection, and the subsection (3) grandfather clause was violative of its equal protection rights.

The trial court found the plaintiff had "failed to convince the Court that the only purpose of the ordinance is to restrict competition and protect the interests of current license holders, and only such a conclusion can overcome the presumption of constitutionality." The trial court did, however, determine that the classifications created by the grandfather clause were unreasonable, and sec. 90–25.1(3) was contrary to the equal protection clause.

The court of appeals affirmed the trial court and held that sec. 90–25.1(2) was constitutional because it was not an unreasonable and arbitrary exercise of police power or a denial of equal protection because it was rationally related to the legitimate municipal objectives of limiting the number of licensed premises and encouraging adherence to liquor regulations. The court of appeals determined there was no violation of the commerce clause because the ordinance advanced legitimate local interests, and there was no evidence of any burden on interstate commerce. The court of appeals reversed the trial court and held that the grandfather clause was constitutional because the protection of "lawfully made investments" was a rational basis for the classifications created by the ordinance.

member of any such town board, village board or common council shall sell directly or indirectly or offer for sale, to any person, firm, or corporation that holds or applies for any such license any bond, material, product, or other matter or thing that may be used by any such licensee or prospective licensee in the carrying on of his or its said business."

The parties legal arguments may be summarized as follows: Plaintiff argues in its brief that sec. 90–25.1(2) is unconstitutional because it bears no reasonable relation to the health, safety, morals, or general public welfare. Plaintiff submits "that there exists no rational basis whereby it can be reasonably concluded that a person whose liquor sales account for 51% of gross receipts is any more likely to be more responsible and more vigilant in obeying and enforcing the applicable liquor regulations than a person whose liquor sales account for only 49%, 35%, or even 20% of gross receipts." Plaintiff argues that the grandfather clause contained in sec. 90–25.1(3) denies it equal protection under the law because there is no rational basis to support the classifications it creates.

The city of Milwaukee argues in its brief that sec. 90–25.1(2) is constitutional because it is "entirely reasonable to assume that the licensee who stands to lose a majority of his income should his license be revoked is more likely to adhere to the regulations than one whose liquor sales are incidental to his business. That potential loss of livelihood by the licensee provides the City of Milwaukee with a strong control factor in its efforts to insure compliance with state and local regulations." The city of Milwaukee argues that the classifications created by sec. 90–25.1(3) have as a rational basis the desire to improve the regulation of Class "A" liquor licensees without unwarranted and unnecessary hardship on those licensees who had already lawfully invested considerable sums of money into their businesses.

In examining the merits of these arguments in resolution of the issues before us, we are cognizant of the limited scope of judicial review. It is a basic maxim of statutory construction that ordinances, like statutes, enjoy a presumption of validity. *State ex rel. Hammermill*

*Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973) ; *State ex rel. Real Estate Examining Bd. v. Gerhardt,* 39 Wis. 2d 701, 710, 159 N.W.2d 622 (1968). Consequently, the party challenging an ordinance bears the frequently insurmountable task of demonstrating beyond a reasonable doubt that the ordinance possesses *no rational basis* to any legitimate municipal objective. *Vance v. Bradley,* 440 U.S. 93, 97 (1979) ; *Clark Oil & Refining Corp. v. Tomah,* 30 Wis. 2d 547, 553, 141 N.W.2d 299 (1966). Although the rational-basis standard of review of the instant ordinance forbids us from substituting our notions of good public policy for those who adopted the ordinance, this does not mean that our evaluation is limited to form and not substance. As the Supreme Court has very recently opined: The rational-basis standard of review is " 'not a toothless one.' " *Schweiker v. Wilson,* 450 U.S. 221, 234 (1981) ; *United States Railroad Retirement Board v. Fritz,* 449 US 166, 184 (1980) (Brennan, J., dissenting).

The ordinance in the case at bar divides all potential Class "A" liquor license applicants into two classifications: (1) Those whose liquor sales account for more than 50 percent of their gross monthly receipts, and (2) those whose liquor sales account for less than 50 percent of their gross monthly receipts. "When faced with a challenge to a legislative classification under the rational-basis test, the court should ask, first, what the purposes of the statute are, and, second, whether the classification is rationally related to achievement of those purposes." 449 US at 184; *County of Portage v. Steinpreis,* 104 Wis. 2d 466, 488, 312 N.W.2d 731 (1981) (Abrahamson, J., dissenting).

Our review of the record in this case requires us to accept the plaintiff's position. The record supports the conclusion that the ordinance was supported by special interest groups as an anticompetitive measure to keep

large retail stores out of the retail liquor business.[5] Only when this controversy entered the judicial arena did the defendant hypothesize the following rational bases to legitimize the legislation, namely, that the ordinance (1) limited the number of premises licensed in the city of Milwaukee, and (2) encouraged adherence to liquor regulations. While this after-the-fact reasoning does not necessarily make it any less worthy of consideration because our review is focused on the reasonable person's perspective of the ordinance regardless of testimony and evidence in the record, we cannot help but conclude in

[5] The transcript of the June 7, 1977, hearing before the Utilities and Licenses Committee reveals that the following typical comments substantiate this conclusion:

Raymond Glowacki, Wisconsin Tavern Keepers Association, testified: "Well, in the end there isn't going to be any little man, all you're going to have is the bidg [sic] man, and I just wonder how far, we hear all kinds of concerns by government—federal, state and whatever, for the small businessman, and yet continuously it seems, legislation and general attitude is one to hell with the small businessman, what we're interested in is what's going to satisfy Mr. Big. And I don't know, as we think of it. I think there should be some protection for the small man, against the big. But in this area, if that be your definition, pretty soon you can go into a shopping center and you won't need anything, anybody else, you just walk into one of the supermarkets—they'll take care of the whole works. I don't know, maybe if that's, that's the vein that the city would go to, I suppose that would be your power to do so, but I think this is leading, once again, in this area this is what you're opening the door to."

Alderman Wayne Frank testified: "It is a restriction only in the sense that we are talking about what I see on the horizon—a continuation of reducing competition perhaps through, at this point, as one of the other speakers mentioned, a reduction in prices to drive other, it seems to me, other retailers out. We have had a continuous decline in the number of retailers in the City of Milwaukee since 1957. We have lost, I think, about 40 liquor licenses (inaudible) as many of these as some of the members of the Committee have indicated, are small businesses and small families that can't keep going because of the competition."

this case that "the Court should receive with some skepticism *post hoc* hypotheses about legislative purpose, unsupported by the legislative history."[6]

Viewing then, somewhat skeptically, the hypothesized purposes of the ordinance—the limitation of liquor licenses and the encouragement of adherence to liquor regulations—we must analyze whether the ordinance's classificatory 50 percent scheme is rationally related to those purposes.

We note, again, that the test is not whether we view the ordinance as unwise; it is an objective determination whether the ordinance is rationally related to the public health, safety, morals, or general welfare.

"[A]n ordinance is not invalid as unreasonable merely because substantially the same result might. be accomplished by the enactment of a different type of ordinance,

---

[6] *Schweiker v. Wilson*, 450 U.S. 221, 244 (1981) (Powell, J., dissenting). "When a legitimate purpose for a statute appears in the legislative history or is implicit in the statutory scheme itself, a court has some assurance that the legislature has made a conscious policy choice. Our democratic system requires that legislation intended to serve a discernible purpose receive the most respectful deference. . . . When a legislative purpose can be suggested only by the ingenuity of a government lawyer litigating the constitutionality of a statute, a reviewing court may be presented not so much with a legislative policy choice as its absence." *Id.* (Citations omitted.)

*Affiliated Distillers Brands Corp. v. Sills*, 106 N.J. Super. 458, 256 A.2d 92, 99 (1969), *aff'd in part, rev'd in part on other grounds*, 56 N.J. 251, 265 A.2d 809 (1970), *amended on rehearing*, 60 N.J. 342, 289 A.2d 257, (1972): "The legislation—. . . where there is a record—was the product of the strong self-interest of the [Wine and Spirit Wholesalers] Association combined with its great political power. Those factors, however, do not make a statute invalid *if there is also public need* coupled with a reasonable attempt to satisfy it. . . . It does seem to be a matter of common sense to weigh more critically a legislative result produced by a small, selfish and powerful group than a statute resulting from a broad public demand." (Emphasis added.)

or because a less burdensome course might have been adopted to accomplish the end. Again, it has been said that the reasonableness of an ordinance is dependent upon whether it tends to accomplish the objects for which the municipality exists. In other words, to be reasonable, an ordinance must tend in some degree to accomplish the object for which the municipal corporation was created and powers conferred upon it. Or, stated somewhat differently, it is manifest that if there is no substantial connection between the assumed purpose of an ordinance and the end to be accomplished, it is unenforceable." 5 McQuillin, *Municipal Corporations,* sec. 18.06, 347 (3d ed. 1969) (Footnotes omitted).

We conclude that the subsection (2) classificatory 50 percent scheme does not accomplish the articulated goals of the ordinance, and consequently, the ordinance is an arbitrary and irrational exercise of the city's police power and a denial of equal protection. We note a glaring absence in the record of any public health, safety, morals, or general welfare "problem" or concern. First, there is no evidence in the record to demonstrate that there is any public need to limit the number of new liquor licenses. Second, we note that the Common Council retains the ultimate right to limit the number of licensed establishments, with or without this ordinance. Ultimately, as we view it, the ordinance only discriminates among *applicants* for a license; it does not limit the number of licenses issued. We note that all a member of the excluded class would have to do is reduce nonliquor sales in order to qualify for a license under this ordinance. We conclude the ordinance is not rationally related to the purpose of limiting the number of liquor licenses.

We further note an evidentiary absence in the record regarding any public health, safety, morals, or general welfare problem or concern with observance of the city

of Milwaukee's laws. Defendant argues that the 50 percent classificatory scheme promotes the observance of liquor regulations by limiting Class "A" licenses to those to whom the threat of revocation presents a greater financial loss.[7] We find this argument unpersuasive. First, a licensee attaining a 5 percent income from sales of liquor amounting to a million dollars would appear equally, if not more, protective of the license as a licensee receiving a 50 percent income from sales of liquor amounting to several thousand dollars. Even a one-percent investment in a very large volume would generate interest in protecting a license. Second, we note that liquor licenses are reviewed annually to ensure control and adherence to the liquor laws. If violations are found to exist, the Utilities and Licenses Committee of the Common Council can simply not renew a license.

Defendant, at oral argument, countered this by stating the ordinance is preventive in nature. The Utilities and Licenses Committee only confronts the licensee once a violation has occurred and "the damage is done." De-

---

[7] We quote from Judge Moser's dissent in this case: "Whether one views this as a 'rational' distinction in terms of the general welfare depends upon one's acceptance of the magical premise that those who make more than one-half of their income from liquor sales are more likely to comply with liquor laws than those who make less than one-half of their income from liquor sales. This premise is entirely without support, but by accepting it without question, the majority is able to uphold an ordinance obviously designed to protect the liquor store owner from competition from grocery stores. Under this theory, a similar ordinance might be passed to protect bakeries and butcher shops, if the necessary political influence exists. Is a butcher shop owner more likely to comply with laws regulating the sale of fresh meat than a grocery store owner? Grocery stores do not have sufficient interest in any one item sold to overcome the presumption under this theory that they are less likely to comply with laws regulating the sale of various items than certain specialty shops." 102 Wis. 2d at 226–27 (Moser, P.J., dissenting).

fendant, however, has neglected, throughout the course of this litigation, to advance the argument that the city of Milwaukee is experiencing a problem with adherence to liquor regulations. We can only conclude from the record in this case, as well as oral arguments before this court, that this ordinance was passed to eliminate a "problem" with adherence to liquor ordinances *not noticed or indicated to exist*. We conclude that the ordinance is not rationally related to the objective of encouraging adherence to the liquor laws.

Because we find sec. 90–25.1(2) unconstitutional, this, by necessity, eliminates the need to review sec. 90–25.1 (3) because that subsection is dependent upon the preceding subsection. We note, however, that even if we were to find sec. 90–25.1(2) constitutional, sec. 90–25.1 (3) is violative of the equal protection clause. We will briefly discuss the constitutional invalidity of subsection (3) because we believe it highlights the arbitrary nature of the classification in subsection (2).

Sec. 90–25.1(3) contains a grandfather clause which allows those who were Class "A" licensees when the ordinance was enacted to continue selling liquor as long as the licenses were renewed annually, regardless of whether the subsection (2) 50 percent requirement was met. The city argues that this is reasonable because it protects the substantial investments these licensees have made in their liquor businesses. The city apparently suggests that if these licensees were not exempted from the subsection (2) requirements, financial ruin would result. If a licensee no longer qualifies for a license because liquor sales do not generate 50 percent of the premises' income, the corollary is, of course, that nonliquor sales comprise more than 50 percent of the premises' income. Arguably, then, the liquor sales are not the financially sustaining portion of the licensee's business. The city's argument also neglects to consider the salability

of the licensee's inventory. A liquor inventory is a sale-able commodity which could be liquidated without financial ruin.

This court has restated on frequent occasions the five-fold test for reviewing equal protection challenges to classificatory schemes in *Omernik v. State*, 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974):

"(1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation."

We note that these five points appear to overlap. We find that the ordinance in the case before us fails parts (1), (2), (3), and (5) of the *Omernik* test, and therefore it is a denial of equal protection. Regarding (1), all classification must be based upon substantial distinctions, the plaintiff argues that the classification is based on the arbitrary date the ordinance took effect. The city responds arguing that the distinction is based on the protection of money invested in liquor operations. We quote from the city's brief: The " 'grandfather clause' will result in improved regulation without unwarranted and unnecessary hardship on those licensees who had already lawfully invested considerable sums of money into their businesses." If the substantial investment in the business requires enactment of a grandfather clause for protection from economic hardship, then that "considerable" investment, as we understand the city's argument, would ensure observance of the city's liquor regulations.

Expanding on the city's argument, if an individual or corporation possessed a liquor license on June 30, 1977,

then the license should be allowed to be renewed annually because, apparently, the investment in the business would ensure observance of Milwaukee's liquor regulations. Yet, the city makes the opposite assumption in support of subsection (2), arguing one's liquor income must be at least 50 percent in order to promote observance of liquor laws. The city's convoluted argument reveals that it will consider any investment substantial *if* one possessed a license on June 30, 1977, and renewed it annually. We conclude, therefore, the distinction in the classificatory scheme is based upon an arbitrary date and not a "substantial distinction."

Part (2) of the *Omernik* test requires that the classification must be germane to the purpose of the law. As we have discussed previously, the 50 percent classificatory scheme is not rationally related to the articulated purposes of the ordinance.

Part (3) of the *Omernik* test requires that the classification must not be based solely on existing circumstances. Plaintiff cites reliance on the factually distinguishable case, *State ex rel. Ford Hopkins Co. v. Mayor,* 226 Wis. 215, 276 N.W. 311 (1937), to support its proposition that the liquor ordinance is based solely on existing circumstances.

" '. . . Unless a statute is curative or remedial, and therefore temporary, the classification must not be based on existing conditions only, but provision must be made for future acquisitions to the class as other subjects acquire the characteristics which form the basis of the classification. This principle is of considerable importance when attempts are made to draw distinctions based on time, putting in one class all the instances existing on a designated date, and placing all others in another class. Under certain circumstances, where such a procedure would discriminate unwarrantably in favor of establishments, things or persons existing, or engaged in particular occupations on a given date, the courts have held

that the classification is in denial of the equal protection of the laws.' " *Id.* at 224 (*quoting* 6 R. C. L. Sec. 378 at 386).

The city argues that, as time goes on, various members of the exempted class will fail to renew their licenses, and therefore the class size will diminish. We note, however, that the grandfather clause contains a perpetual right, not a temporary one. If one held a Class "A" license on June 30, 1977, it could be renewed ad infinitum regardless of the percentage of liquor sales. As we stated in *State ex rel. Ford Hopkins Co. v. Mayor,* "[t]he distinction cannot be based on time." *Id.* We conclude that subsection (3) is based solely on existing circumstances on June 30, 1977, and therefore the classification is a denial of equal protection.

Part (5) of the *Omernik* test requires that the characteristics of each class should be *so far different* to reasonably suggest the propriety of substantially different legislation. The grandfather clause establishes two separate classes whose only distinguishing feature is whether they sold liquor before or after June 30, 1977. We cannot conclude that these two classes are "so far different" from one another as to reasonably suggest the propriety of substantially different legislation.

In reaching our conclusions in this case, we are very cognizant of two points. First, we are aware that the states, under the broad sweep of the Twenty-first Amendment, are endowed with "something more than the normal" police power in regulating the sale of liquor *in the interests of the public health, safety, morals, and general welfare. California v. LaRue,* 409 U.S. 109, 114 (1972) ; *Milwaukee v. Piscuine,* 18 Wis. 2d 599, 607, 119 N.W.2d 442 (1963). Second, we agree with the court of appeals' comment on our scope of review: "We are to indulge in every presumption possible to sustain an ordinance, and will search for any reasonable basis for its

enactment." *State ex rel. Grand Bazaar v. Milwaukee,* 102 Wis. 2d 208, 217, 306 N.W.2d 255 (Ct. App. 1981); *accord Highway 100 Auto Wreckers v. West Allis,* 6 Wis. 2d 637, 646, 96 N.W.2d 85, 97 N.W.2d 423 (1959). With these points in mind, we conclude that secs. 90–25.1(2) and (3) do not pass constitutional muster.

While we have recognized the presumption of constitutionality and the rather easily accommodated rational-basis test, we should not blindly rubber stamp legislation enacted under the guise of the city's police power when careful review has revealed no logical link between the legislation and the objective it was enacted to effect. We are obliged to scrutinize carefully this law because it raises a distinction between classes which are not different under constitutional tests. Having met this obligation, we conclude that the ordinance enacted in this case is arbitrary, unreasonable, and discriminatory, and, therefore, we must hold its provisions void as both violative of the city's police power and equal protection guarantees.

*By the Court.*—The decision of the court of appeals is reversed.