# WISCONSIN WINE & SPIRIT INSTITUTE, Plaintiff-Appellant,

v.

# Michael LEY, and Wisconsin Department of Revenue, Defendants-Respondents.

Court of Appeals

*No. 86–2028. Submitted on briefs October 5, 1987.—Decided October 15, 1987.*

(Also reported in 416 N.W.2d 914.)

959

960

For the plaintiff-appellant the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* and *Peregrine, Marcuvitz & Peltin, S.C.,* of Milwaukee.

For the defendants-respondents the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *James C. Mc Kay, Jr.,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

SUNDBY, J.  The parties agree that the issue presented for review is: Does the classification of liquor wholesalers maintained by sec. 125.69(1)(a), Stats., violate the equal protection requisites of the fourteenth amendment to the United States Constitution and art. I, sec. 1, of the Wisconsin Constitution?[1]

---

[1]Article I, sec. 1 of the Wisconsin Constitution provides:

All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are

961

Because we conclude that it does, we reverse the declaratory judgment in favor of the respondents.

## I.
## BACKGROUND OF THE CASE

Section 125.69(1)(a), Stats.,[2] prohibits an intoxicating liquor wholesaler, among others, from holding a direct or indirect interest in a retail "Class A" liquor license or establishment, and a retail "Class A" liquor licensee from holding a direct or indirect interest in a liquor wholesale permit or establishment, except that if such prohibited interest existed on October 3, 1963, licenses and permits which would otherwise be in violation of the restriction shall continue to be renewed unless other cause is shown for nonrenewal.

The appellant, Wisconsin Wine & Spirit Institute, is a voluntary trade association comprised of eighteen

---

instituted, deriving their just powers from the consent of the governed.

"The protection afforded by this provision is substantially equivalent to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution." *Yotvat v. Roth,* 95 Wis. 2d 357, 363 n.1, 290 N.W.2d 524, 528 (Ct. App. 1980).

[2]Section 125.69(1)(a), Stats., provides:

No intoxicating liquor manufacturer, rectifier or wholesaler may hold any direct or indirect interest in any "Class A" license or establishment and no "Class A" licensee may hold any direct or indirect interest in a wholesale permit or establishment, except that permits and licenses issued before October 3, 1963, which would after that date be a violation of this restriction, shall be renewed unless other cause is shown for the nonrenewal.

Section 125.69(1)(a) restates the substance of secs. 176.05(1a)(a) and (am), Stats. (1979–80), as created by ch. 355, Laws of 1963, and amended by ch. 462, Laws of 1963, and sec. 107, ch. 433, Laws of 1965.

members holding intoxicating liquor wholesaler's licenses. Seventeen of its members were in existence before October 3, 1963, but held no interest in a retail "Class A" liquor license. Twelve corporations, one cooperative and one individual who hold a liquor wholesaler's license also hold a retail "Class A" liquor license under the grandfather clause contained in sec. 125.69(1)(a), Stats.

## II.
## STANDARD OF REVIEW

Our scope of review is limited where the constitutionality of a statute is involved. *State ex rel. Grand Bazaar v. Milwaukee*, 105 Wis. 2d 203, 208, 313 N.W.2d 805, 808 (1982). A statute is presumed to be constitutional and will be held unconstitutional only if it appears so beyond a reasonable doubt. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973). The burden of establishing the unconstitutionality of the statute is on the person attacking it, who must overcome the strong presumption in favor of its validity. *Id.*, 205 N.W.2d at 793. If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act accordingly. *Id.* We do not consider the economic, social, and political matters dealt with in statutes. *Id.*

The Institute contends that the statute in question violates the rights of its members to the equal protection of the laws. A party challenging a statute on equal protection grounds must demonstrate beyond a reasonable doubt that the legislative choice is

without a rational basis. *Clark Oil & Refining Corp. v. Tomah,* 30 Wis. 2d 547, 553, 141 N.W.2d 299, 302 (1966). In this case, the legislature has not articulated its rationale for permitting certain liquor wholesalers to hold retail liquor licenses while excluding others. We, however, are obligated to construct such a rationale if possible. *Milwaukee Brewers v. DH&SS,* 130 Wis. 2d 79, 101, 387 N.W.2d 254, 264 (1986).

While the rational-basis standard of review forbids us from substituting our notions of good public policy for those of the legislature, and, if necessary, requires that we construct a rational basis for a statute, this does not mean that our evaluation is limited to form and not substance. *Grand Bazaar,* 105 Wis. 2d at 209, 313 N.W.2d at 808–09. The rational-basis standard of review is "not a toothless one." *Id.,* 313 N.W.2d at 809, quoting *Schweiker v. Wilson,* 450 U.S. 221, 234 (1981).

## III.
## RATIONALE FOR STATUTE AND GRANDFATHER CLAUSE

The Institute does not attack the constitutionality of the prohibition against liquor wholesalers having an interest in a retail liquor establishment. It is necessary, however, that we examine the rationale of sec. 125.69(1)(a), Stats., if we are to correctly assess the validity of the grandfather clause which exempts some liquor wholesalers from the statutory restriction.

Section 125.69(1)(a), Stats., is one of the statutes which collectively form what has been called the "tied house" law. 66 Op. Att'y. Gen. 276, 278 (1977). Tied

house statutes are aimed at preventing the integration of manufacturing, wholesale, warehouse, and retail outlets in the liquor industry. *State v. Black Steer Steak House, Inc.,* 102 Wis. 2d 534, 537, 307 N.W.2d 328, 330 (Ct. App. 1981); *Borman's, Inc. v. Michigan Liquor Control Com'n,* 195 N.W.2d 316, 319 (Mich. Ct. App. 1972).[3] Such statutes are not a recent development. Washington sustained the validity of its tied house law in 1913. *Lewer v. Cornelius,* 129 P. 911, 914 (Wash. 1913). A number of courts, including the Michigan Court of Appeals, have held variations of the "tied house" statute valid against constitutional attack. *Borman's,* 195 N.W.2d at 319–20. *See also Opinion of the Justices to the House of Rep.,* 333 N.E.2d 414, 418 (Mass. 1975) ("Legislation on these lines cannot be pronounced unconstitutional.").

Liquor wholesalers holding retail liquor licenses, by functioning as vertically integrated economic units, have a competitive advantage over other retail liquor licensees. *Borman's,* 195 N.W.2d at 321. By employing economics of scale in its marketing techniques, a wholesaler holding a retail license can sell its beverages at lower prices. *Id.* In *Affiliated Distillers Brands Corp. v. Sills,* 265 A.2d 809, 814 (N.J. 1970), *amended on rehearing,* 289 A.2d 257 (N.J. 1972), the New Jersey Supreme Court also cites the dangers that would result from concentration of liquor retailing in the hands of economically powerful interests.

The legislature has not suggested a rationale for the grandfather exception in sec. 125.69(1)(a), Stats., which requires that permits and licenses which would

---

[3]Other courts have advanced the fostering of temperance as a further ground to support tied house legislation. *Borman's,* 195 N.W.2d at 322.

otherwise violate the tied-house restriction issued to liquor wholesalers and "Class A" liquor retailers before October 3, 1963 be renewed unless other cause is shown for nonrenewal. The usual rationale for this type of grandfather clause is economic, and it is on that basis that the trial court found the clause constitutional. The trial court stated:

> It is a reasonable assumption that wholesalers, who also possessed retail licenses prior to the cutoff date, had already invested significant resources to develop and maintain a retail business. Such equitable or reliance interest is a substantial distinction between the subject classes, consideration of which is an appropriate part of the legislative function.

We reject the proposition that purely economic reasons justify a perpetual exception from a police power regulation. The court in *Grand Bazaar,* 105 Wis. 2d at 214–15, 313 N.W.2d at 811, rejected the city's argument that the grandfather clause of the ordinance was reasonable because it protected the substantial investments the "grandfathered" licensees had made in their licenses. The court applied the five-fold test for viewing equal protection challenges to classification schemes set forth in *Omernik v. State,* 64 Wis. 2d 6, 19, 218 N.W.2d 734, 742 (1974), as follows:

> (1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of

other classes as to reasonably suggest the propriety of substantially different legislation.

*Grand Bazaar,* 105 Wis. 2d at 215, 313 N.W.2d at 811.

We utilize those portions of the *Grand Bazaar* court's analysis of the five-fold test which are dispositive of the validity of the grandfather clause contained in sec. 125.69(1)(a), Stats.

In *Grand Bazaar,* the city had argued that part (3) of the *Omernik* test was satisfied because, as time went on, various members of the exempted class would fail to renew their licenses, and the class size would diminish. The trial court herein rested its conclusion in part on this same reasoning. However, as to this reasoning the *Grand Bazaar* court stated:

> We note, however, that the grandfather clause contains a perpetual right, not a temporary one. If one held a Class "A" license on June 30, 1977, it could be renewed ad infinitum regardless of the percentage of liquor sales. As we stated in *State ex rel. Ford Hopkins Co. v. Mayor* [226 Wis. 215, 224, 276 N.W. 311, 315 (1937)], "[t]he distinction cannot be based on time." We conclude that [the grandfather clause] is based solely on existing circumstances on June 30, 1977, and therefore the classification is a denial of equal protection.

*Grand Bazaar,* 105 Wis. 2d at 217, 313 N.W.2d at 812.

Section 125.69(1)(a), Stats., creates a perpetual class of privileged wholesalers-retailers based solely on existing circumstances on October 3, 1963. We conclude that *Grand Bazaar* is controlling and that the classification is a denial of equal protection.

Part (5) of the *Omernik* test requires that the characteristics of each class shall be *so far different* as

to reasonably suggest the propriety of substantially different legislation. *Omernik,* 64 Wis. 2d at 19, 218 N.W.2d at 742. The grandfather clause establishes two separate classes of liquor wholesalers whose only distinguishing feature is that on October 3, 1963 one class had an interest in a retail liquor license or establishment while the other did not. We cannot conclude that these two classes are so far different from one another as to reasonably suggest the propriety of substantially different legislation. In fact, the creation of a perpetual class of wholesale-retail liquor licensees exacerbates the very problem intended to be addressed by the tied house laws. By the combination of the prohibition against wholesalers holding a retail liquor license and the exception thereto, the legislature created a class of liquor wholesalers with monopolistic powers to practice all of the evils against which tied house laws are intended to protect. For this additional reason we conclude that the grandfather clause contained in sec. 125.69(1)(a), Stats., creates a classification without a rational basis and is a denial of the equal protection of the laws.

Other state courts which have addressed the issue have reached the same result. *Affiliated Distillers Brands,* 265 A.2d at 816; *Harrison v. Buckhalt,* 364 So. 2d 283, 285 (Ala. 1978); *City of Graysville v. Swann,* 388 So. 2d 540, 541 (Ala. 1980). In *Affiliated Distillers Brands,* 265 A.2d at 816, the court noted that if, as contended by the state officers, manufacturer-wholesaler combinations were a serious threat to the industry, perhaps any grandfather clause would be invalid.

*Harrison* involved the validity of an ordinance which prohibited the retail sale of intoxicants within 600 feet from a church building or grounds, or school

buildings or grounds. However, the ordinance contained a grandfather clause which permitted those already licensed, and their successors, to make retail sales of such beverages within the prohibited distance and to continue to do so indefinitely. The court struck down the grandfather exception. The court stated that the grandfather clause prevented the fulfillment of the purpose of the ordinance. *Id.,* 364 So. 2d at 285. The court pointed out that in those cases in which similar grandfather clauses have been upheld the statute or ordinance provides for the ultimate elimination of the sale of alcoholic beverages in a prohibited area. *Id.*

A grandfather clause which permits a temporary right to do a prohibited thing, if it has a rational basis such as amortization of an investment, may be valid, depending on the nature of the regulation.[4] If the regulation is a police power regulation, a grandfather clause which permits a limited class to continue the evil legislated against, will be closely scrutinized. If on the other hand, the statute or ordinance imposes a licensing or examination requirement on a new entry into a trade, it is well within the legislative prerogative to provide that the past business experience or practical training is a substantial equivalent of any licensing or examination requirement. *See Harrison,* 364 So. 2d at 285.

---

[4]The statute construed in *Opinion of the Justices to the House of Rep.,* 333 N.E.2d 414 (Mass. 1975), provided for a compliance amortization period of approximately five years. Although we do not rely on the fact, we note that the privileged wholesalers-retailers herein have exercised their exclusive privilege for approximately twenty-four years.

The defendants attempt to equate the grandfather clause contained in sec. 125.69(1)(a), Stats., with the exception to the liquor license quotas created by ch. 48, Laws of 1973, and sustained in *Moedern v. McGinnis,* 70 Wis. 2d 1056, 236 N.W.2d 240 (1975). We reject the equation.

Recognizing that the age-of-majority legislation threatened financial ruin to those holding beer-only licenses, the legislature permitted such licensees to apply for and obtain intoxicating liquor licenses in excess of the existing quota in their respective municipalities. The power of the state over the liquor industry is almost plenary. *Moedern,* 70 Wis. 2d at 1068–69, 236 N.W.2d at 246. Under the twenty-first amendment to the United States Constitution, the state could absolutely prohibit traffic in intoxicants. *Id.* at 1070, 236 N.W.2d at 247. The state is thus free to establish the quota of liquor licenses in each community at any figure it deems consistent with public policy. As the court said in *Moedern* at 1071, 236 N.W.2d at 247: "The wisdom of increasing the number of available licenses was for the legislature." The court found that the plaintiff's arguments under the equal protection guarantee of the constitution did not need to be addressed. *Id.* at 1068, 236 N.W.2d at 246. We can see no legitimate basis upon which the legislation involved in *Moedern* could be attacked on equal protection grounds. We therefore reject *Moedern* as inapposite.

In reaching our conclusion that the grandfather clause created a classification which is a denial of equal protection we have not ignored the defendants' argument that, under the twenty-first amendment to

the federal constitution,[5] the state exercises extraordinary police powers in regulating the liquor industry. *California v. La Rue,* 409 U.S. 109, 114 (1972). However, the state's police power is subverted by an exception that permits a privileged class to continue to practice an evil which the state seeks to eliminate. The presumption of constitutionality which we are obliged to apply to sec. 125.69(1)(a), Stats., does not allow us to find that the exception to its provisions has a rational, nondiscriminatory basis.

## IV.
### SEVERABILITY OF GRANDFATHER CLAUSE

Section 990.001(11), Stats., sets forth the general rule of construction that an invalid statutory provision is severable from a valid provision. We are bound to observe that rule unless observance "would produce a result inconsistent with the manifest intent of the legislature." *Burlington Northern v. Superior,* 131 Wis. 2d 564, 580, 388 N.W.2d 916, 923 (1986), *cert. denied sub nom.,* — U.S. —, 93 L. Ed. 2d 837 (1987).

In the absence of a severability clause, and clear language in the statute concerning severability of an invalid provision, we may examine the "scope, history, context, subject matter and object of the statute in order to discern the intent of the legislature." *Burlington Northern,* 131 Wis. 2d at 580, 388 N.W.2d at 923.

---

[5]Section 2 of the twenty-first amendment to the United States Constitution provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

The factors to consider in deciding whether a statute should be severed from an invalid provision are the intent of the legislature and the viability of the severed portion standing alone. *Id.,* 388 N.W.2d at 924. Invalid provisions of a statute may not be severed when it appears from the act that the legislature intended the statute to be effective only as an entirety and would not have enacted the valid part by itself. *Id.* at 580–81, 388 N.W.2d at 924.

We conclude, as did the New Jersey court in *Affiliated Distillers Brands,* 265 A.2d at 816, that the principal object of the legislature in enacting what is now sec. 125.69(1)(a), Stats., was the prohibition of tied houses—in our case, between liquor wholesalers and retailers. That objective will not be impaired by the invalidation of the grandfather clause which is at odds with the purpose of the statute. We therefore conclude that the unconstitutional grandfather clause may be excised from the statute without affecting the validity of the remainder.

*By the Court.*—Judgment reversed.