**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 19, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP367**

Cir. Ct. No. **2021CV13**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

WISCONSIN COTTAGE FOOD ASSOCIATION, MARK RADL, STACY BEDUHN, KRISS MARION, LISA KIVIRIST, DELA ENDS AND PAULA RADL,

     PLAINTIFFS-RESPONDENTS,

  V.

WI DEPARTMENT OF AGRICULTURE, TRADE AND CONSUMER PROTECTION AND RANDY ROMANSKI,

     DEFENDANTS-APPELLANTS.

---

     APPEAL from an order of the circuit court for Lafayette County: RHONDA L. LANFORD, Judge. *Reversed and cause remanded with directions*.

     Before White, C.J., Donald, P.J., and Colón, J.

     ¶1    COLÓN, J.  The Wisconsin Department of Agriculture, Trade and Consumer Protection and Randy Romanski (collectively DATCP) appeal from an

order of the circuit court finding the retail food establishment laws found in WIS. STAT. § 97.30 (2021-22),[1] and WIS. ADMIN. CODE ch. ATCP 75, along with its corresponding appendix, unconstitutional as a violation of equal protection and due process and enjoining DATCP from enforcing the licensing and other requirements found in those laws against sellers of unbaked, "not potentially hazardous," homemade foods.

¶2      On appeal, DATCP argues that the retail food establishment laws do not violate equal protection or due process and are, therefore, constitutional. In the alternative, DATCP further argues that the circuit court's injunction should be invalidated due to its vagueness.

¶3      For the reasons set forth below, we conclude that the retail food establishment laws do not violate equal protection or due process and are, therefore, constitutional. Consequently, we reverse the circuit court's order finding the retail food establishment laws unconstitutional and enjoining DATCP from enforcing those laws against sellers of unbaked, not potentially hazardous, homemade foods. We further remand with directions to enter judgment in favor of DATCP and dismiss the complaint.

## BACKGROUND

¶4      Wisconsin generally requires that anyone looking to prepare and sell food directly to consumers for a profit obtain a license and follow certain requirements as a "retail food establishment." *See* WIS. STAT. § 97.30(1)(c),

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

(2)(a); *see also* WIS. ADMIN. CODE ch. ATCP 75, ch. ATCP 75 app. ("Wisconsin Food Code"). Among the several requirements for obtaining and maintaining a license and operating a retail food establishment are inspection requirements, food storage and handling requirements, facility requirements, and licensing fees. *See, e.g.*, § 97.30(2)(a), (3); WIS. ADMIN. CODE §§ ATCP 75.06, 75.067. There are also limited exemptions to the retail food establishment laws, including for nonprofit organizations hosting a limited number of events in a calendar year and for producers of specific types of food, such as popcorn, maple syrup, honey, sorghum syrup, and cider. *See* § 97.30(2)(b)1.; WIS. ADMIN. CODE § ATCP 75.063(5)-(7). DATCP is charged with conducting regular inspections of retail food establishments and ensuring compliance with the retail food establishment laws. Sec. 93.07(24); WIS. ADMIN. CODE § ATCP 75.10.

¶5    In Lafayette County Circuit Court Case No. 2016CV6, Lisa Kivirist, Kriss Marion, and Dela Ends (collectively Kivirist) challenged these retail food establishment laws as applied to Kivirist and similarly situated individuals of baked, not potentially hazardous,[2] homemade foods, such as cookies, cakes, and

---

[2] The retail food establishment laws define "potentially hazardous" food as "a food that requires temperature control" because it is capable of supporting growth of certain foodborne illnesses. WIS. STAT. § 97.30(1)(bm). Generally speaking, potentially hazardous foods require refrigeration. However, its counterpart, i.e., "not potentially hazardous," is not itself a term defined in the retail food establishment laws. However, as a result of Case No. 2016CV6, WCFA has adopted the term "not potentially hazardous," and generally uses it interchangeably with the term "shelf-stable" foods, i.e., foods that do not require refrigeration. We emphasize, however, that just because a food does not meet the statutory definition of potentially hazardous does not mean it is free from safety concerns. In other words, a food is not automatically considered safe if it does not qualify as a "potentially hazardous" food. As DATCP's manager of the Retail Food and Recreational Program Section, James Kaplanek, explained in a report prepared for this case, while there may be fewer food safety concerns presented by foods that are not considered potentially hazardous, there are nevertheless still food safety concerns, such as those related to food allergens and improper handling and labeling. Thus, we do not consider "not potentially hazardous" or "shelf-stable" to be synonymous with "safe."

muffins, as a violation of the right to equal protection and due process.[3] At a hearing held on May 31, 2017, the circuit court in that case agreed and enjoined DATCP from enforcing the retail food establishment laws against sellers of baked, not potentially hazardous, homemade foods. DATCP did not appeal the circuit court's decision in Case No. 2016CV6, and in February 2021, Kivirist moved to find DATCP in contempt for violating the injunction.[4] The circuit court denied the motion and clarified that its previous order applied to homemade, shelf-stable foods that have been baked in an oven.

¶6      At the same time in February 2021 that Kivirist moved for contempt in Case No. 2016CV6, the Wisconsin Cottage Food Association,[5] along with several individuals including Mark Radl, Stacy Beduhn, Stephanie Zink,[6] Kriss Marion, Lisa Kivirist, Dela Ends, and Paula Radl (collectively WCFA) filed the complaint underlying this case against DATCP, alleging that the retail food establishment laws found in WIS. STAT. § 97.30 and WIS. ADMIN. CODE ch. ATCP 75, along with Wisconsin's Food Code contained in the corresponding appendix, were unconstitutional as applied to them as sellers of unbaked, not potentially

---

[3] The Honorable Duane M. Jorgenson presided over Case No. 2016CV6 involving the challenge to the retail food establishment laws as it related to baked, not potentially hazardous, homemade foods.

[4] Information related to the motion for contempt has been taken from Wisconsin's CCAP (Consolidated Court Automation Programs). CCAP is an online website that contains information entered by court staff, and this court may take judicial notice of information on CCAP. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

[5] WCFA is a nonprofit association that supports the production and sale of homemade foods in Wisconsin. Many of the named individuals are members of WCFA, and they have sought to sell their homemade food products.

[6] Pursuant to a stipulation by the parties, Stephanie Zink was dismissed as a plaintiff because she was allowed to begin selling her homemade granola.

hazardous, homemade foods, including foods such as fudges, candies, energy bars, roasted coffee beans, and dried soup mixes.

¶7      Specifically, WCFA alleged, similar to Case No. 2016CV6, that the retail food establishment laws violated the right to equal protection and due process.  WCFA argued that the foods it sought to sell were safe, or even safer, then other foods sold under exemptions from the retail food establishment laws, and it argued that many of the requirements for a license under the retail food establishment laws were such a burden on producers of homemade goods so as to effectively prohibit the production and sale of homemade products.[7]  WCFA further alleged that its members who sought to sell unbaked, not potentially hazardous, homemade foods are similarly situated to those groups who fall under exemptions to the retail food establishment laws and there is no rational reason for the difference in treatment.  In fact, WCFA alleged that the laws were motivated by the illegitimate purpose of protecting commercial business from the competition posed by those who sell homemade foods.  As a result, WCFA requested that the circuit court enjoin DATCP from enforcing the licensing and other requirements of those laws against them and other similarly situated individuals.

¶8      DATCP filed a motion to dismiss on March 29, 2021, and argued that the retail food establishment laws were rationally related to the legitimate state purposes of public health, safety, and welfare; promoting food safety and consumer confidence; and protection of consumers.  Consequently, DATCP

---

[7] Indeed, WCFA refers to the retail food establishment laws at issue here as "the Ban" based on its characterization of how the retail food establishment laws operate as a practical matter as applied to sellers of unbaked, not potentially hazardous, homemade foods.

argued the laws were constitutional as applied to WCFA and similarly situated individuals seeking to sell homemade food products directly to consumers. DATCP argued that WCFA effectively sought to have the court create an exemption to the retail food establishment laws that the legislature did not see fit to create at the time the laws were enacted. Following briefing and a hearing on the motion, the circuit court denied DATCP's motion to dismiss.

¶9 WCFA proceeded to depose several former and current DATCP employees, and it sought the employees' opinions on the safety of the foods at issue in this case and the policy choices behind the exemptions in comparison to the foods WCFA sought to produce and sell. Both WCFA and DATCP also hired experts to provide opinions on the safety of the foods at issue here.

¶10 The case proceeded to summary judgment. At that time, the circuit court found that the retail food establishment laws were unconstitutional and enjoined DATCP from enforcing the laws against WCFA and similarly situated individuals. In particular, the circuit court found that the retail food establishment laws were designed with the primary purpose of food safety for consumers, and the circuit court found that there was no rational reason for treating WCFA and similarly situated individuals differently to further that purpose when the foods WCFA sought to sell were as safe, or safer, than foods sold under the exemptions. Consequently, the circuit court granted WCFA's motion for summary judgment, denied DATCP's motion, and entered an injunction prohibiting the enforcement of the retail food establishment laws against WCFA and all similarly situated individuals.

¶11 DATCP appealed and additionally sought a stay of the circuit court's injunction, which this court granted.

**DISCUSSION**

¶12    Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We review a decision granting summary judgment "independently of the circuit court, benefiting from its analysis." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶21, 241 Wis. 2d 804, 623 N.W.2d 751. We apply the same standard as the circuit court. *Id.* "Specifically, a court first examines the pleadings to determine whether a claim for relief is stated and [then] whether a genuine issue of material fact is presented." *Id.*

¶13    On appeal, DATCP raises two main arguments as to why we should reverse the circuit court's grant of summary judgment for WCFA. First, DATCP argues that the retail food establishment laws being challenged in this case satisfy rational basis review and do not violate equal protection or due process. Second, and in the alternative, DATCP argues that the circuit court's injunction is unlawful due to the vagueness of the injunction.

¶14    We conclude that the retail food establishment laws survive rational basis review and are, therefore, constitutional. Thus, we reverse the circuit court's order granting summary judgment in favor of WCFA and enjoining the enforcement of the retail food establishment laws against the sellers of unbaked, not potentially hazardous, homemade foods. As a result of our conclusion, we do not reach the question of whether the circuit court's injunction is unlawful. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

### I. General Principles of Equal Protection

¶15  WCFA challenges the constitutionality of the retail food establishment laws as a violation of the right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section I of the Wisconsin Constitution, as applied to it, and all similarly situated individuals, as sellers of unbaked, not potentially hazardous, homemade foods.[8]  We review WCFA's challenge *de novo*.  ***Blake v. Jossart***, 2016 WI 57, ¶26, 370 Wis. 2d 1, 884 N.W.2d 484.

¶16  During our review, we presume the statute is constitutional.  ***Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund***, 2018 WI 78, ¶25, 383 Wis. 2d 1, 914 N.W.2d 678.  Thus, "[a] party challenging the constitutionality of a statute bears a very heavy burden in overcoming the presumption of constitutionality." ***Id.***, ¶27.  "If any doubt persists about whether a statute is constitutional, we resolve doubt in favor of concluding that the statute is constitutional." ***Id.***, ¶26.

¶17  Challenges to the constitutionality of a statute are generally of two types:  (1) facial challenges or (2) "as applied" challenges.  ***Id.***, ¶24; *see also* ***Blake***, 370 Wis. 2d 1, ¶26.  In this case, we consider that WCFA has brought a hybrid challenge to the retail food establishment laws because its challenge is "'as applied' in the sense that it does not seek to strike the [law] in all its applications," but the challenge is "facial" in that it "challenges application of the law more

---

[8] WCFA additionally challenged the retail food establishment laws on the grounds that the laws violated due process.  However, "[w]hile equal protection and due process challenges may have different implications, '[t]he analysis under both the due process and equal protection clauses is largely the same.'" ***Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund***, 2018 WI 78, ¶39, 383 Wis. 2d 1, 914 N.W.2d 678 (second alteration in original; citation omitted).  Thus, "as a practical matter," we need only address one in order to resolve the other. *See* ***id.***

broadly to all [similarly situated individuals]." *Gabler v. Crime Victims Rights Bd.*, 2017 WI 67, ¶28, 376 Wis. 2d 147, 897 N.W.2d 384 (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)). WCFA, therefore, must meet the higher burden of proof applicable to facial challenges and demonstrate, beyond a reasonable doubt, that the law cannot be enforced under any circumstances against sellers of unbaked, not potentially hazardous, homemade foods. *See Mayo*, 383 Wis. 2d 1, ¶33; *Gabler*, 376 Wis. 2d 147, ¶¶28-29 (citing *Doe*, 561 U.S. at 194).

¶18 "Parties seeking to challenge the constitutionality of a statute on equal protection grounds must demonstrate that the statute treats members of a similarly situated class differently." *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶56, 237 Wis. 2d 99, 613 N.W.2d 849. If a rational basis supports the classification, we will uphold the statute. *Id.* "The right to equal protection does not require that such similarly situated classes be treated identically, but rather requires that the distinction made in treatment have some relevance to the purpose for which classification of the classes is made." *Blake*, 370 Wis. 2d 1, ¶30 (citation omitted).

¶19 Equal protection challenges generally involve two levels of scrutiny: (1) strict scrutiny and (2) rational basis scrutiny. *Mayo*, 383 Wis. 2d 1, ¶¶28-29. Strict scrutiny is reserved for those challenges involving a fundamental right or differential treatment of a suspect class. *Aicher*, 237 Wis. 2d 99, ¶56; *see also Blake*, 370 Wis. 2d 1, ¶31. "In cases where a statutory classification does not involve a suspect class or a fundamental interest, the classification will be upheld if there is any rational basis to support it." *Blake*, 370 Wis. 2d 1, ¶31 (citation omitted). In other words, under rational basis review, "a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when enacting the provision." *Id.*, ¶32. The parties do not dispute that WCFA's challenge involves

neither a fundamental right nor a suspect class, and therefore, we apply rational basis review.

¶20    A legislative classification that meets the following five criteria will satisfy rational basis review:

> (1)   All classification[s] must be based upon substantial distinctions which make one class really different from another.
>
> (2)   The classification adopted must be germane to the purpose of the law.
>
> (3)   The classification must not be based upon existing circumstances only.  [It must not be so constituted as to preclude addition to the numbers included within a class.]
>
> (4)   To whatever class a law may apply, it must apply equally to each member thereof.
>
> (5)  That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Porter v. State*, 2018 WI 79, ¶34, 382 Wis. 2d 697, 913 N.W.2d 842 (alteration in original; citation omitted).  However, at the heart of the inquiry lies the question whether the legislature had a rational basis for enacting the statute.  *See Blake*, 370 Wis. 2d 1, ¶45; *Mayo*, 383 Wis. 2d 1, ¶40.

¶21    With these principles in mind, we turn to the retail food establishment laws at issue here and whether those laws violate equal protection as applied to sellers of unbaked, not potentially hazardous, homemade foods.

**II.    Whether the Retail Food Establishment Laws Violate Equal Protection**

¶22    WCFA challenges the retail food establishment laws primarily based on the contention that it seeks to sell foods that are as safe, or safer, than foods

sold under the exemptions to those laws, and because there is no rational reason for treating WCFA as sellers of unbaked, not potentially hazardous, homemade foods different from those sellers that fall under the exemptions, WCFA argues that the retail food establishment laws violate equal protection.

¶23 By contrast, DATCP contends that multiple conceivable, legitimate rationales support the retail food establishment laws and the exemptions created by the legislature. DATCP argues that the circuit court made three main errors in finding otherwise: (1) the circuit court applied a heightened standard of rational basis review; (2) the circuit court erred when it used the exemptions to the retail food establishment laws as part of the relevant class for comparison in the equal protection analysis; and (3) the circuit court placed undue emphasis on the prior case from 2016 involving baked, not potentially hazardous, homemade foods. DATCP argues that, in essence, WCFA seeks an exemption from the retail food establishment laws that the legislature has not seen fit to enact, and it is not for the courts to second guess the legislature's line drawing when there is a conceivable, legitimate basis for the line the legislature drew.[9] We agree with DATCP.

¶24 Turning to the first step of rational basis review, the retail food establishment laws—WIS. STAT. § 97.30 and WIS. ADMIN. CODE ch. ATCP 75 and the Wisconsin Food Code in its appendix—generally apply to anyone who seeks to sell food directly to consumers for a profit. There are, however, exemptions for

---

[9] In fact, DATCP maintains that the legislature has considered proposals to exempt sellers of unbaked, not potentially hazardous, homemade foods from the retail food establishment laws and has not enacted them. Thus, DATCP argues that WCFA is attempting to override what the legislature saw fit to enact.

certain food sellers from the retail food establishment laws.[10]  On a basic level, there are two main classes of food sellers—namely, those who are subject to the licensing and other requirements of the retail food establishment laws and those food sellers who have been exempted.  However, within this second class of food sellers who have been exempted, there are those food sellers who have been exempted because of the type of food they sell—e.g., popcorn, honey, sorghum syrup, or maple syrup.  *See* WIS. STAT. § 97.30(2)(b)1.b.; WIS. ADMIN. CODE § ATCP 75.063(5).  There are also those food sellers who have been exempted because of the purpose and quantity of their food sales—e.g., nonprofit and charitable organizations who are limited in the quantity of food they sell. *See* WIS. ADMIN. CODE § ATCP 75.063(6)-(7).

¶25    The parties dispute the proper classification relevant to the equal protection analysis of the retail food establishment laws.  DATCP argues that we need look no further than the generally applicable law—i.e., WIS. STAT. § 97.30 that imposes requirements on anyone seeking to sell food directly to consumers for a profit—to determine the relevant class for the equal protection analysis.  On the other hand, WCFA argues that we must also look to exemptions from the retail

---

[10] WCFA identifies several other "exemptions" related to eggs, canned foods, and poultry.  *See* WIS. STAT. § 97.28 (providing exemptions for certain producers of eggs from requirements for food processing plants); WIS. STAT. § 97.29(2)(b)2. (providing exemptions from food processing plant requirements for certain producers of canned foods); WIS. STAT. § 97.42(11) (providing exemptions from licensing and inspection requirements related to livestock and poultry).  We consider these irrelevant to the inquiry given that these exemptions apply to statutory schemes other than the retail food establishment laws from which WCFA seeks to be exempted.  Accordingly, we limit our discussion to those classifications discussed by the retail food establishment laws themselves.

Similarly, we do not accept WCFA's invitation to consider Case No. 2016CV6 as a relevant exemption for our purposes.  A circuit court decision is "neither precedent nor authority upon which this court may base its decision[.]" ***Kuhn v. Allstate Ins. Co.***, 181 Wis. 2d 453, 468, 510 N.W.2d 826 (Ct. App. 1993).

food establishment laws to determine the relevant classifications. We consider *Blake v. Jossart* instructive on this point.

¶26 In *Blake*, the challenger argued that a law prohibiting certain people from obtaining a license for operating a daycare created three relevant classifications: (1) people permanently barred from licensure; (2) people barred from licensure for five years, assuming they could prove rehabilitation; and (3) people barred for life, but eligible to prove rehabilitation. *Id.*, 370 Wis. 2d 1, ¶34. By contrast, the Department of Children and Families (DCF) argued that the relevant classification was limited to people situated similarly to the challenger, i.e., those permanently barred from licensure because they participated in fraudulent activity related to public benefits programs. *Id.*, ¶35. Our supreme court agreed with the classification advanced by the DCF and considered the relevant class to be limited to the class of people permanently barred from licensure because they participated in fraudulent activity related to public benefits programs. *Id.*, ¶¶37-41. The court did not consider the additional classifications created by the statute that the challenger considered relevant.

¶27 Consequently, in this case, we consider that we need look no further than the generally applicable licensing requirement contained in WIS. STAT. § 97.30 for retail food establishments to define the relevant class. However, we nonetheless conclude that, even considering the exemptions to the retail food establishment laws, the first step of the rational basis test is satisfied. Each class of food sellers created by the retail food establishment laws has a characteristic about it that makes it different from the other classes. Food sellers under the generally applicable law are able to produce a variety of foods for sale to consumers in whatever quantities they choose, while those food sellers falling

under exemptions from the retail food establishment laws are limited by, for example, type or quantity of food sold.

¶28 WCFA argues that the first step is not satisfied because the foods it seeks to sell are of the same type of foods sold under the exemptions and, therefore, there are no substantial distinctions between the classifications that really make them different from one another. We disagree. WCFA seeks an exemption for sellers of unbaked, not potentially hazardous, homemade foods. In effect, WCFA seeks an exemption to sell a variety of foods in unlimited quantities for unlimited profits from unlicensed, uninspected home kitchens. In contrast, the food sellers exempted from the retail food establishment laws are generally limited in either the quantity of food sold or the type of food sold—a measure presumably implemented by the legislature to control any public health issues with exempting these foods in the first place. "[T]he legislature must necessarily engage in a process of line-drawing." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citation omitted). "[T]he fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* at 316 (second alteration in original; citation omitted).

¶29 Without the same quantity or type of restrictions on their food sales, WCFA cannot demonstrate that this first step is satisfied. In other words, we consider that there are substantial distinctions based on quantity and types of foods sold that make the classes created by the retail food establishment laws different, and we respect where the legislature drew the line. Thus, we proceed to the second step of the test.

¶30 Under the second step, DATCP identified two main purposes behind the laws: (1) food safety and the general welfare and protection of consumers and

(2) minimizing the risk of adulteration, misbranding, and contamination of foods by allergens and foodborne illness. *See* WIS. ADMIN. CODE § ATCP 75.01(2). While one by itself would satisfy the test, both purposes identified by DATCP are germane to the purpose behind the classifications made by the retail food establishment laws. The more food sold, either in quantity or variety, the greater the risk to consumers of misbranding of foods, adulteration of foods, contamination of foods, and overall food safety. Thus, we conclude that requiring food sellers who are not limited by type of food or quantity of food sold to obtain a license and submit to certain requirements and further identifying certain sellers of foods by type or quantity of food sold for an exemption to be germane to the purpose of the law.

¶31  WCFA argues that, based on deposition testimony from DATCP employees and the expert opinions, the purposes behind the laws advanced by DATCP fail to pass muster. WCFA contends that the DATCP employees believe the laws to be irrational and arbitrary and the experts agree that the foods that WCFA seeks to sell are generally safe. We reject WCFA's argument, and we will not second-guess the lines drawn by the legislature because WCFA has identified DATCP employees and provided an expert who would draw the line somewhere else. *See Blake*, 370 Wis. 2d 1, ¶32 n.16 (stating that equal protection is not offended by "imperfect" classifications and classifications that are "not made with mathematical nicety" (citation omitted)).

¶32  Citing to *State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwaukee*, 105 Wis. 2d 203, 313 N.W.2d 805 (1982), WCFA implores that we also look behind the statutes to the allegedly illegitimate purpose behind them. We reject WCFA's reliance on *Grand Bazaar* for this purpose because of its use of rational basis with teeth.

¶33 In addressing classifications for a liquor license in *Grand Bazaar* as a violation of equal protection as a result of the "special interest groups" behind them, our supreme court stated,

> Although the rational-basis standard of review of the instant ordinance forbids us from substituting our notions of good public policy for those who adopted the ordinance, this does not mean that our evaluation is limited to form and not substance. As the Supreme Court has very recently opined: The rational-basis standard of review is "not a toothless one."

*Grand Bazaar*, 105 Wis. 2d at 209-10 (citation omitted). Clearly, the result in *Grand Bazaar* where the court looked to the special interest groups behind the law stemmed from an application of rational basis with teeth. *See Porter v. State*, 2017 WI App 65, ¶20, 378 Wis. 2d 117, 902 N.W.2d 566 (describing *Grand Bazaar* as a case employing "rational basis with bite"). Rational basis with teeth (or bite) has since been explicitly repudiated by our supreme court. *Mayo*, 383 Wis. 2d 1, ¶32 ("Rational basis with teeth has no standards for application, usurps the policy forming role of the legislature and creates uncertainty under the law."). Consequently, we limit our discussion to the purposes advanced by DATCP, which themselves reflect the purposes as stated in the retail food establishment laws themselves, *see* WIS. ADMIN. CODE § ATCP 75.01(2).[11]

¶34 To be sure, our question is not whether DATCP employees, either former or current, believe the foods at issue to be safe or whether incidents of foodborne illness have been reported from the consumption of homemade foods,

---

[11] Putting aside the fact that a circuit court case is not precedential or binding on this court, we observe that the decision in Case No. 2016CV6 predates our supreme court's decision in *Mayo*, and the record reflects that the circuit court in Case No. 2016CV6 relied heavily on *State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwaukee*, 105 Wis. 2d 203, 313 N.W.2d 805 (1982), and rational basis with teeth in reaching its decision in that case.

but rather, our question is whether the legislature created classifications that are germane to the purpose of the law. In the prior step, we established that the legislature drew a line related to the quantity and types of foods sold and further established that a greater quantity of food sold and a greater variety in the foods sold requires regulation, thus creating classes for regulation based on the quantity and types of foods sold. With the stated purposes of the law being (1) food safety and the general welfare and protection of consumers and (2) minimizing the risk of adulteration, misbranding, and contamination of foods by allergens and foodborne illness, we conclude that the classifications are germane to the purpose of the law. To be clear, we can discern a rational relationship between imposing regulations on sellers choosing to produce foods in larger quantities and in more varied types because the risks involving foodborne illness, contamination, and food safety increase with greater quantities and varieties of food sold.

¶35 While WCFA does not make any argument as to the third and fourth steps, we nevertheless note, for the sake of completeness, that the classification is clearly not based on existing circumstances, and the class can be expanded or reduced based on current food sales. We further note under the fourth step that the law applies equally to members of each class, and anyone selling foods that do not qualify for an exemption must apply for a license and meet certain requirements under the retail food establishment laws just the same. Accordingly, we consider that these third and fourth steps have been satisfied.

¶36 Under the fifth and final step, we examine whether the characteristics of each class are also different enough so as to reasonably suggest different treatment. WCFA again attempts to compare itself to those food sellers that qualify for exemptions to the retail food establishment laws, and it argues that its foods are safe, or even safer, than foods sold under the exemptions such that the

characteristics between them and those who are exempted are not so different as to reasonably suggest different treatment. We again disagree.

¶37 As we previously established, the legislature drew a line, and there is a rational reason for where the legislature drew that line based on the foods sold and quantities of those foods sold. "[T]he government 'must be allowed leeway to approach a perceived problem incrementally.'" *Lamers Dairy Inc. v. U.S. Dep't of Agric.*, 379 F.3d 466, 475 (7th Cir. 2004) (quoting *Beach Commc'ns*, 508 U.S. at 316). While it may be true that one specific type of food WCFA seeks to sell might be safe in comparison to another exempted food, we emphasize that WCFA does not seek an exemption for one specific type of food but rather seeks a broad exemption to produce any type of unbaked, not potentially hazardous, homemade foods in unspecified quantities. Consequently, a comparison between one specific type of food WCFA seeks to sell with an exempted food fails given the broader and unlimited nature of the exemption WCFA seeks.

¶38 Accordingly, we conclude that the retail food establishment laws satisfy the rational basis test, and we conclude that the laws are not unconstitutional as a violation of equal protection as applied to sellers of unbaked, not potentially hazardous, homemade foods.

## CONCLUSION

¶39 In sum, we conclude that the retail food establishment laws found in WIS. STAT. § 97.30, WIS. ADMIN. CODE § ATCP 75, and Wisconsin's Food Code found in the corresponding appendix do not violate equal protection or due process. As a result, we reverse the circuit court's order granting summary judgment in favor of WCFA and enjoining DATCP from enforcing these laws against WCFA and similarly situated individuals. We further remand this matter

18

with directions to enter judgment in favor of DATCP and dismissing WCFA's complaint.

*By the Court.*—Order reversed and cause remanded with directions.

Recommended for publication in the official reports.